IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, an Employee Welfare Benefit Plan, by Arthur H. Bunte, Jr., a Trustee thereof, in his representative capacity, | ) ) ) ) ) ) ) | |
| | ) | Case No. 14 C 5195 |
| Plaintiff, | ) ) | |
| v. | ) ) | Judge John Z. Lee |
| AMERICAN INTERNATIONAL GROUP, INC., NAHGA CLAIM SERVICES, INC., THE MAKSIN GROUP, and CHARTIS INSURANCE AGENCY, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Central States, Southeast and Southwest Areas Health and Welfare Fund ("Central States") is an employee welfare benefit plan as defined by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(2). Central States insures employees and their dependents ("insureds") under the Central States Health and Welfare Fund Plan Document ("Plan"). Defendants American International Group, Inc., NAHGA Claim Services, Inc., The Maksin Group, Inc., and Chartis Insurance Agency, Inc. (collectively, "Defendants") provide insurance coverage for students and other persons engaged in athletic activities. Central States believes Defendants are primarily liable for payments it paid to various insureds and seeks to recover those payments from Defendants in this action. Defendants now move to dismiss Central States' Amended Complaint. For the following reasons, the Court grants Defendants' motion.

## Factual Background

Central States' claims arise from several instances where dependents of employees suffered injuries participating in athletics. *See* Am. Compl. ¶¶ 35–72. Central States alleges that, in these instances, both the Plan and Defendants' insurance policies covered the insureds' medical expenses. *Id.* However, in such cases of overlapping coverage, Central States contends that the primary responsibility for payment belonged to Defendants—not Central States. *Id.* Nevertheless, Central States promptly paid for the insureds' medical expenses in order to take advantage of negotiated discounts with medical service providers. *Id.* ¶ 74. And now, having paid these expenses for which it believes it was not responsible, Central States seeks to recover the excess payments from Defendants not by way of money damages, but through declaratory judgment and various forms of equitable relief, namely the imposition of an equitable lien or constructive trust, restitution, unjust enrichment, and subrogation. *Id.* ¶¶ 75–100.

## Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Additionally, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park,* 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal–Mart Stores, Inc.,* 722 F.3d 1014, 1027 (7th Cir. 2013)). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873, 885 (7th Cir. 2012) (citing

*Iqbal,* 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

**Analysis**

Under § 502(a)(3) of ERISA, a participant, beneficiary, or fiduciary may sue "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate *equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3) (emphasis added). Defendants argue that Central States impermissibly attempts to circumvent the requirements of § 502(a)(3) by casting its complaint for legal relief—that is, $342,569.73 in money damages—as one seeking declaratory and equitable relief. *See* Defs.' Mem. 4–8.

This lawsuit is not the first of its kind filed by Central States. It has filed nearly identical complaints across the country "as part of a larger strategy to obtain judicial review." *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Student Assur. Servs., Inc.*, No. 13 C 1065, 2014 WL 2009053, at *2 (D. Minn. May 16, 2014). That being said, the Seventh Circuit has not addressed this precise issue head-on; though, many other Circuits have, unanimously holding § 502(a)(3) bars the same type of claims that Central States seeks to assert here. *See Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150, 159–60 (2d Cir. 2014) ("the claims raised by Central States are legal, not equitable, and therefore may not be brought under § 502(a)(3)"); *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Bollinger, Inc.*, 573 F. App'x 197, 202 (3d Cir. 2014) ("regardless of how many different labels Central States applies to its claims, . . . [Central States] does not seek equitable relief"); *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. First Agency, Inc.*, 756 F.3d 954, 960 (6th Cir. 2014) ("The district court's money judgment . . . looks by all appearances like an award of money

damages. And money damages, the paradigm of legal relief, lie beyond the radius of § 1132(a)(3)(B)."); *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Health Special Risk, Inc.*, 756 F.3d 356, 366 (5th Cir. 2014) ("Central States cannot establish that the basis of their claim is equitable."). Each of these Circuits based its reasoning on two United States Supreme Court decisions, *Great-West Life & Annuity Ins. Co v. Knudson*, 534 U.S. 204 (2002), and *Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356 (2006).

In *Great-West*, the Supreme Court interpreted § 502(a)(3) to limit plan administrators to purely "equitable relief," finding the phrase "must mean *something* less than *all* relief." *Great-West*, 534 U.S. at 209 (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 258 n.8 (1993)) (emphasis in original). Courts, therefore, should not "adjust the carefully crafted and detailed enforcement scheme embodied in [ERISA]" and should only grant relief "*typically* available in equity." *Id.* at 221 (quoting *Mertens*, 508 U.S. at 256) (emphasis in original). And since "almost invariably . . . suits seeking . . . to compel the defendant to pay a sum of money to the plaintiff" seek legal relief, ERISA plaintiffs cannot simply label their claims as equitable to avoid the hurdles imposed by § 502(a)(3). *Id.* at 210 (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918–19 (1988) (Scalia, J., dissenting)). Instead, as the Supreme Court noted in *Sereboff*, ERISA plaintiffs must seek the transfer of "specifically identifiable" funds in order for such monetary relief to be properly characterized as equitable. *Sereboff*, 547 U.S. at 363–64.

The Supreme Court explained the distinction between "specifically identifiable" funds that are the object of equitable remedies and untraceable monetary funds that are the object of legal relief:

> [I]n this case [plaintiff] sought "specifically identifiable" funds that were "within the possession and control of the [defendants]"—that portion of the tort settlement due [plaintiff] under the terms of the ERISA plan, set aside and "preserved [in the plaintiff's] investment accounts." Unlike [the plaintiffs in Great–West], [the

> plaintiffs here] did not simply seek "to impose personal liability . . . for a contractual obligation to pay money." It alleged breach of contract and sought money, to be sure, but it sought its recovery through a constructive trust or equitable lien on a specifically identified fund, *not from the [defendants'] assets generally*, as would be the case with a contract action at law.

*Id.* at 362–63 (emphasis added) (citations omitted).

Central States concedes it does not lay claim to "specifically identifiable" funds that would allow it to invoke *Sereboff*. *See* Pl.'s Resp. 11. Rather, according to Central States, Seventh Circuit authority suggests it would depart from its sister Circuits in finding that § 502(a)(3) forecloses this lawsuit. *See Winstead v. Indiana Ins. Co.*, 855 F.2d 430, 435 (7th Cir. 1988) (finding contested liability between overlapping insurers should be apportioned pro-rata); *Winstead v. J.C. Penney Co.*, 933 F.2d 576, 580 (7th Cir. 1991) (finding one ERISA plan may sue another ERISA plan for a declaratory judgment that the second plan has the primary coverage and must pay the claim). But these cases predate *Great-West* and *Sereboff* by many years, and to the extent that they relied on "federal common law to apportion liability between an ERISA and a non-ERISA plan[,] . . . that avenue is now closed." *Gerber Life Ins. Co.*, 771 F.3d at 158 (discussing *Great-West*'s impact on *Indiana Insurance* and similar decisions "offer[ing] equitable and common law-based remedies to ERISA plans"). Although the Seventh Circuit has not explicitly recognized this proposition, it has certainly acknowledged the recent developments in the law. *See Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 620 (7th Cir. 2008) (addressing *Sereboff* and its effect on the availability of equitable relief to recover funds that are not specifically traceable). Accordingly, this Court is not convinced the Seventh Circuit would depart from the other Circuits that have already addressed the issue.

Other authority cited by Central States is equally unavailing. For example, Central States raises *CIGNA Corp. v. Amara*, 131 S.Ct. 1866 (2011), and *Kenseth v. Dean Health Plain, Inc.*,

722 F.3d 869 (7th Cir. 2013), for the proposition that "make-whole relief in the form of monetary compensation is available in appropriate circumstances under § 502(a)(3)." Pl.'s Resp. 6. But neither of these cases dealt with the issue before this Court: whether an ERISA plan may obtain money damages from a non-ERISA insurer's assets generally as "equitable relief" under § 502(a)(3). Indeed, under *CIGNA* and *Kenseth*, the "appropriate circumstances" to which Central States refers are limited to situations where a plaintiff can show the defendant breached a fiduciary duty. *See CIGNA*, 131 S.Ct at 1880; *Kenseth*, 722 F.3d at 879. Defendants here are not ERISA fiduciaries, and these cases are likewise inapposite.[1]

Nor does the Court find convincing Central States' assertion that because it does not have a contractual relationship with Defendants, its suit necessarily sounds in equity. It claims that "[o]ne of the traditional roles of equity was to adjust the right of parties who are not in privity and therefore had no recourse to a contractual remedy in the law courts." Pl.'s Resp. 12. Central States cites no case law for this proposition. In any event, even assuming Central States has a proper *basis* for equitable relief, it must still show *the nature of the remedy* is also equitable. *See Great-West*, 534 U.S. at 213 ("[W]hether [restitution] is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought."). Because it cannot, Central States' claims fail as a matter of law.

As a final matter, the Court notes that Count II of Central States' Amended Complaint suffers for reasons independent from the constraints of § 502(a)(3). Count II asks the Court to

---

[1] In fact, Central States' reliance on *Kenseth* is puzzling because, if anything, *Kenseth* cuts against its assertion that the Seventh Circuit would rule differently than other Circuits. The court in *Kenseth* acknowledged that *Great-West* and *Sereboff* limits district courts to granting relief traditionally only available in equity and, more importantly, recognized that the relief sought here has been foreclosed. *See Kenseth*, 722 F.3d at 877–78 ("[T]he [Supreme] Court . . . interpreted the term 'appropriate equitable relief' as categories of relief that . . . were typically available in equity." And where "the money in question was not the particular money paid by the tort defendant, making the claim one for legal rather than equitable relief[,] [s]uch a claim could not be brought under section 1132(a)(3)." (citations and quotations omitted)).

"examine Central States' Plan and the overlapping accident insurance policies issued and/or administered by the Defendants and declare the liability of Central States and the Defendants, each to pay present unpaid and future medical expenses, relating to the Insureds' injuries suffered in athletic accidents." Am. Compl. ¶ 80. But declaratory relief requires the existence of an actual, justiciable case and controversy, and Central States does not sufficiently allege one here. As the Fifth Circuit has recognized, "to the extent that Central States is seeking a prospective declaration of payment obligations—which would allow the parties to determine who must pay first in the event of future injury—the issue is not ripe for review." *Health Special Risk, Inc.*, 756 F.3d at 368; *see also Urantia Found. v. C. I. R.*, 684 F.2d 521, 525 (7th Cir. 1982) ("It is settled law that an actual controversy, in the context of declaratory judgment actions, must be one which exists in fact and not one which may occur in the future.").

The Court acknowledges that this result may seem at odds with the purpose or goals of ERISA. Nevertheless, such arguments are "inadequate to overcome the words of [the statute's] text regarding the *specific* issue under consideration." *Great-West*, 534 U.S. at 220 (quoting *Mertens*, 508 U.S. at 261) (emphasis in original). In this case, the specific issue is the availability of legal relief under § 502(a)(3), an issue on which the Supreme Court offered substantial guidance in *Great-West* and *Sereboff*. Despite framing its complaint as one for declaratory and equitable relief, Central States sues for money damages from Defendants' assets generally and thus fails to convince this Court that its claims are permissible under this line of precedent. For these reasons, the Court finds § 502(a)(3) bars the present action.

## Conclusion

The Court grants Defendants' motion to dismiss [22]. Civil case terminated.

7

**SO ORDERED**            **ENTER:** 5/12/15

                                                  */s/ John Z. Lee*

                                                  **JOHN Z. LEE**
                                                  **United States District Judge**